UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CARMEN MEDINA DOLLIVER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 20-10046-LTS |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM AND ORDER

November 10, 2020

SOROKIN, J.

Carmen Medina Dolliver seeks reversal and remand of a decision by the Commissioner of the Social Security Administration ("the Commissioner") denying her Supplemental Security Income ("SSI") benefits. Doc. No. 15. The Commissioner seeks an order affirming his decision. Doc. No. 18. For the reasons that follow, Dolliver's Motion for Order Reversing the Decision of the Commissioner is DENIED and the Commissioner's Motion to Affirm the Decision of the Commissioner is ALLOWED.

I.   BACKGROUND

   A.   Procedural History

On January 17, 2018, Dolliver applied for SSI, alleging an onset of disability on October 1, 2017. A.R. at 249.[1] The Social Security Administration twice denied her application, initially

---

[1] Citations appearing as "A.R. at ___" are to the administrative record, Doc. No. 14. The pincite refers to the page number(s) assigned by the Social Security Administration that appear in the lower right-hand corner of each page.

1

on April 13, 2018, id. at 129–31, and upon reconsideration on August 31, 2018, id. at 135–37. Dolliver then requested a hearing before an administrative law judge ("ALJ") on September 17, 2018, id. at 140–42, which was held on July 30, 2019, and in which she and a vocational expert testified, id. at 47–75.  In a written decision dated September 3, 2019, the ALJ found that Dolliver was not disabled.  Id. at 16–30.  After a timely request for review of the ALJ's decision, the Appeals Council denied Dolliver's request on November 22, 2019, making the ALJ's decision the final decision of the Commissioner.  Id. at 1–6.  Having exhausted her administrative remedies, Dolliver subsequently filed this action appealing the Commissioner's final decision on January 10, 2020.  Doc. No. 1.

  B.  Dolliver's Physical Impairments

In a February 12, 2018 disability report for her SSI application, Dolliver stated that she suffers from various physical impairments that limited her ability to work,[2] namely type 2 diabetes mellitus, foot blisters, and overall body pain.  A.R. at 268.  Her diabetes diagnosis goes back several years to as early as 2004.  Id. at 860.  Dolliver also underwent an ophthalmological evaluation and was diagnosed with diabetic retinopathy as early as June 2015.  Id. at 637–41. Her primary care physician's records from as early as June 2016 also indicate diagnoses of hypertension and dyslipidemia, and that the monofilament sensation of her feet was impaired upon examination.  Id.

In December 2017, after Hurricane Maria struck Puerto Rico and left her unemployed, Dolliver relocated to New Bedford, Massachusetts, to live closer to her daughters.  Id. at 52–53,

---

[2] To the extent Dolliver was also diagnosed with mental impairments, in his written decision, the ALJ acknowledged the diagnoses of anxiety and depression, A.R. at 24, by non-treating state physicians that examined her, e.g., A.R. at 116–27, 720–24.  Because Dolliver does not challenge the ALJ's treatment of these impairments as non-severe on appeal, the Court need not address them further and instead focuses on her physical impairments.

57–58.  On January 26, 2018, she was admitted to the emergency department of Saint Vincent Hospital in Worcester because she ran out of insulin, and she was advised to find a local primary care physician to ensure that she maintained a continuous supply of medication.  Id. at 645.  Dolliver visited Dr. Mariel Del Rio-Cadorette of Prime Medical Associates on February 16, 2018, to establish care.  Id. at 646.  Dr. Del Rio-Cadorette noted her type 2 diabetes mellitus diagnosis was "without complications."  Id. at 647.

After Dolliver applied for SSI in January 2018, on February 20, 2018, Dr. Del Rio-Cadorette completed an Emergency Aid to the Elderly, Disabled, and Children Medical Report ("EAEDC Medical Report") for the Massachusetts Department of Transitional Assistance to supplement Dolliver's disability report from earlier that month.  Id. at 673–87.  In her report, Dr. Del Rio-Cadorette assessed the effect Dolliver's diabetes diagnosis would have on her activities of daily living, noting that Dolliver's "uncontrolled diabetes" and insulin use would impair her ability to do ordinary housework, food shopping, driving, visiting her family or friends, as well as prevent her from being more independent; and that Dolliver experienced blurred vision when her blood sugar level was elevated due to hyperglycemia, which would affect her ability to use a computer.  Id. at 677.  Even so, Dr. Del Rio-Cadorette opined that while Dolliver had these physical impairments and that they would affect her ability to work, she did not believe that the impairments would last longer than six to twelve months.  Id. at 678.

On March 2, 2018, Dolliver was evaluated for diabetic retinopathy by Dr. Jorge Rivera of Advanced Eye Centers, who performed a dilated fundus examination, but otherwise denied any other symptoms.  Id. at 709–11.  Dr. Rivera noted that the exam "revealed mild to moderate diabetic changes" in her eyes, referred Dolliver to a retina specialist in the office, and dispensed an updated prescription for her glasses.  Id. at 688.  After experiencing continued blurred vision,

on April 11, 2018, Dolliver returned to the office where she saw Dr. Kameran Lashkari, who diagnosed her with mild nonproliferative retinopathy of the left eye without macular edema, and mild nonproliferative retinopathy of the right eye with macular edema, stable in both eyes.  Id. at 707–08.

On April 10, 2018, Dr. Karen Grande, an advising physician to Disability Determination Services, reviewed Dolliver's disability report and medical records.  Id. at 107–14.  Dr. Grande noted that Dolliver's primary impairment was her obesity, that Dolliver's statements regarding her symptoms were partially consistent with the records, and that Dolliver's physical impairments—which accounted for the impairments that Dolliver listed in her February 12, 2018 disability report—were not severe, leading Dr. Grande to find Dolliver not disabled.  Id. at 112–13.

On April 20, 2018, Dolliver returned to Dr. Del Rio-Cadorette when she experienced elevated blood sugar levels which she was unable to lower.  Id. at 689.  In the visit notes, while the diagnosis was still listed as "[t]ype 2 diabetes mellitus without complications," Dr. Del Rio-Cadorette noted that Dolliver's diabetes was "very uncontrolled," instructed her to keep sugar logs tracking her blood sugar levels for her to bring to her next consultation, and updated her prescriptions to help control her blood sugar; she increased the dosage of Lantus and prescribed Jardiance for diabetes, as well as Losartan for hypertension.  Id. at 690–91.

On May 3, 2018, Dolliver completed a function report in which she described that her conditions created limitations in her ability to lift, squat, bend, stand, kneel, climb stairs, and see. Id. at 292–301.  On May 25, 2018, Dolliver returned to Advanced Eye Centers to visit Dr. Scott Corin by referral of Dr. Lashkari.  Id. at 703–05.  Dr. Corin observed that Dolliver had age-related nuclear cataracts in both of her eyes and, after discussing cataract excision, Dolliver

4

agreed to undergo surgery. Id. at 705. She returned to see Dr. Corin on June 22, 2018, who administered an A-scan and prescribed her eyedrops and medications to be taken before her cataract surgery. Id. at 700–01. Dolliver again complained of blurred vision and difficulty reading small print, but otherwise denied any symptoms. Id. at 700.

On July 8, 2018, Dr. John Benanti, an advising physician to Disability Determination Services, reviewed Dolliver's updated disability report and medical records on reconsideration. Id. at 116–27. Noting the new report with updates to how Dolliver's activities of daily living were affected and her ongoing vision issues due to cataracts, Dr. Benanti opined that Dolliver did not have a severe impairment and was not disabled. Id. at 123–24. The same record was reviewed by Dr. Ayanna Quinones on August 31, 2018, where she factored in "depressive, bipolar, and related disorders" and "anxiety and obsessive-compulsive disorders" as mental impairments. Id. at 124–25. Dr. Quinones likewise found that the impairments were not severe and that Dolliver was not disabled. Id. at 126–27.

On July 24, 2018, Dolliver underwent cataract excision surgery for her left eye, and the following day, Dr. Bryan Murphy of Advanced Eye Centers noted that she was doing well post-operatively. Id. at 795–97. On August 1, 2018, Dolliver sought emergency treatment at Southcoast Health after experiencing dizziness. Id. at 809–19. She complained of intermittent, short-lasting dizzying episodes for the prior six months, but awoke with a severe case that remained constant that morning. Id. at 815. Neurological evaluations did not reveal any abnormalities, but she remained unsteady when on her feet and was admitted for observation by Dr. Christopher Shestak. Id. at 813–14. Dr. Arunima Rajbhandary diagnosed Dolliver with peripheral vertigo, prescribed a new medication to help alleviate symptoms of dizziness, and discharged her on August 3, 2018. Id. at 819. On August 6, 2018, Dr. Corin noted that Dolliver

continued to do well post-operatively, and explained a new drop schedule to her after she missed her previously scheduled appointment due to her vertigo episode the week prior.  Id. at 794.  On August 10, 2018, to follow up on the vertigo episode, Dolliver underwent a CT scan and an MRI, which revealed no abnormalities.  Id. at 725–28.

On October 25, 2018, Dolliver returned to Dr. Vallone for a colonoscopy.  Id. at 743–44.  While the colonoscopy revealed no abnormalities, Dr. Vallone noted that she had iron deficiency anemia, although the cause was unclear to him.  Id.  On November 28, 2018, Dolliver met with Dr. Lashkari to assess her vision.  Id. at 780–83.  While Dolliver stated that she still experienced some blurred vision, Dr. Lashkari evaluated her left eye and again noted the fact that she was doing well after the operation.  Id. at 782.  On December 10, 2018, Dolliver had an endoscopy performed by Dr. Thomas Vallone of Hawthorn Medical Associates.  Id. at 741–48.  The procedure showed some effacement of the small intestinal lining that was healing, and Dr. Vallone recommended that Dolliver use acetaminophen for pain relief instead of aspirin.  Id. at 750.

On January 4, 2019, Dolliver returned to Hawthorn Medical Associates and saw Joymon Sebastian, an endocrinology nurse practitioner.  Id. at 758–64.  Sebastian noted Dolliver's uncontrolled diabetes, hyperglycemia, and obesity, and discussed strategies to address her conditions.  Id. at 762–64.  On January 9, 2019, Dolliver returned to Advanced Eye Centers for a follow-up visit with Dr. Lashkari.  Id. at 774–76.  Dolliver expressed that she felt that her vision was improving despite not yet receiving new glasses with the updated prescription.  Id. at 774.  Dr. Lashkari noted Dolliver continued to do well post-operatively, reviewed "[t]he potential ophthalmic manifestations of diabetes mellitus," that her bilateral diabetic retinopathy remained stable, stressed the importance of Dolliver keeping control of her hypertension, blood sugar

6

levels, and hyperglycemia, and informed her that she should return immediately if she were to experience worsening vision.  Id. at 776.

On March 11, 2019, Dolliver returned to Advanced Eye Centers to see Dr. Corin after experiencing blurred vision and glare from oncoming headlights.  Id. at 771–73.  She agreed to go forward with plans to undergo cataract excision in her right eye.  Id. at 773.  On March 26, 2019, Dolliver visited Dr. Vallone for iron deficiency anemia, reporting fatigue and constipation, but denying other symptoms.  Id. at 755–58.  Dr. Vallone recommended that Dolliver increase her iron supplementation to daily dosing.  Id. at 758.  On April 3, 2019, Dolliver visited Dr. Del Rio-Cadorette for medication refills and described hand pain.  Id. at 751–54.  Dolliver expressed that her fingers would get stuck when she bent them.  Id. at 752.  Although her evaluation was unremarkable and Dolliver denied any other symptoms, Dr. Del Rio-Cadorette referred her to a rheumatologist at Hawthorn to further assess her hand.  Id. at 751, 753.

On April 19, 2019, Dolliver returned to Hawthorn Endocrinology and visited Mr. Sebastian for a follow-up consultation.  Id. at 891–96.  Mr. Sebastian's notes include diagnoses of vitamin D deficiency, uncontrolled diabetes, hyperlipidemia, a reference to weight gain and her obesity, and a discussion of the importance of controlling blood sugar and eating better.  Id. at 895–96.  Dolliver then had a consultation with Dr. Michael Hait of Hawthorn Rheumatology on April 26, 2019, to address multiple joint pain.  Id. at 882–86.  Dr. Hait observed that Dolliver suffered from chronic body pain, particularly in her fingers, which limited her ability to open jars, but that her activities of daily living were otherwise reportedly intact.  Id. at 884–85.  He ordered X-rays to assess whether Dolliver had arthritis and advised her to return for a follow-up visit in two weeks.  Id. at 885.  Dolliver returned to see Dr. Hait on May 10, 2019.  Id. at 878–82.  The X-rays of her hands revealed "[m]ild degenerative changes" and "mild erosive change" in

her left hand's fifth digit. Id. at 880. Although Dolliver reported that her blood sugars were under better control, Dr. Hait noted that Dolliver still experienced bilateral hand pain and stiffness in her fingers, and diagnosed her with degenerative joint disease. Id. at 880–81.

On June 21, 2019, Dolliver returned to Dr. Hait for a follow-up consultation regarding the degenerative joint disease diagnosis. Id. at 863–67. Dr. Hait noted that Dolliver's right hand would swell and experience pain, but that her activities of daily living were reportedly intact. Id. at 865. While Dolliver expressed that she had a trigger finger, Dr. Hait could not elicit the response upon examination. Id. at 866. He also assessed diabetic hand syndrome with the note "type 2 diabetes mellitus with other diabetic arthropathy." Id. Dr. Hait referred her to a neurologist for diabetic neuropathy, and on June 25, 2019, Dolliver met with Dr. John Stamoulis of Hawthorn Neurology. Id. at 858–63. Dr. Stamoulis's notes indicate that Dolliver had been experiencing numbness, tingling, and episodic burning sensations in her distal lower extremities that tended to be felt at nighttime and that appeared to be more prominent after physical activity. Id. at 860. While numbness was the initial sensation she experienced, Dolliver stated that the feeling had increasingly become more painful. Id. Dr. Stamoulis noted that Dolliver's blood sugar control was "erratic," but more stable with insulin and hypoglycemic medication. Id. He also noted that Dolliver experienced decreased perception to light touch, pinprick, and vibration, assessed diabetic peripheral neuropathy, and prescribed her Neurontin. Id. at 862.

On July 3, 2019, Dolliver returned to Advanced Eye Centers for a follow-up visit with Dr. Murphy the day after undergoing cataract excision surgery in her right eye. Id. at 912–14. He reported that Dolliver's surgery went well and advised her of the post-operative healing timeline. Id. at 913–14. Her one-week follow-up on July 10, 2019, with Dr. Corin also showed that Dolliver was doing well, and Dr. Corin discussed prescribed eyedrops and the importance of

complying with the eyedrop schedule he gave her.  Id. at 909–11.  At a six-week follow-up consultation on August 7, 2019, Dr. Lashkari assessed that Dolliver was doing well "from a vitreoretinal standpoint."  Id. at 906–08.

    C.    The ALJ Hearing

On July 30, 2019, Dolliver appeared before the ALJ via video teleconferencing and was represented by an attorney.[3]  Id. at 47–75.  Dolliver was 62 years old at the time of the hearing.  Id. at 51–52.  She testified that she went as far as eighth or ninth grade in her education, and that she worked as a housekeeper for a family from 1989 until 2017, when Hurricane Maria struck Puerto Rico.  Id. at 52.  When questioned by the ALJ, Dolliver recounted that in the latter years of her employment, she was "getting weak" and began to have difficulty handling heavy objects, such as using the large vacuum that the family had, and lifting the mattresses when she would make the beds.  Id. at 54, 56.  She explained that she experienced dizzy spells that was diagnosed as vertigo when she relocated to the mainland.  Id. at 54–55.  Dolliver noted that she struggled to get her diabetes under control even with insulin use, that she recently was diagnosed with arthritis in her hand, that she no longer takes aspirin because of gastrointestinal lining concerns, that she was experiencing tingling in her feet, and that she had undergone surgery in both of her eyes to remove cataracts.  Id. at 58.  When questioned by her attorney about her activities of daily living, Dolliver explained that she performed some tasks, but required assistance from her daughters with others.  Id. at 60–61.  She said she gets fatigued when required to walk long distances, that she needs to take iron and vitamin supplements, that she had begun experiencing locking of her middle finger in her right hand, and that she no longer drives.  Id. at 64–65, 70.

---

[3] A vocational expert also testified at the ALJ hearing, but the Court need not address her testimony, as the ALJ did not rely on it in his decision, nor does Dolliver challenge it on appeal.

Dolliver also testified that remaining seated or standing for extended periods of time was difficult as she would regularly need to shift her position.  Id. at 65–66.

> D.   The ALJ's Decision

The ALJ issued his written decision on September 3, 2019, in which he followed the five-step evaluation process utilized in Social Security disability claims to determine if Dolliver was disabled.[4]  Id. at 16–30.  At the first step, the ALJ found that Dolliver had not engaged in substantial gainful activity since January 17, 2018.  Id. at 24.  At step 2, the ALJ found that Dolliver suffered from a number of medically determinable impairments:

> [S]tatus-post left cataract excision (July 2018) and status-post right cataract excision (July 2019); diabetes mellitus with nonproliferative retinopathy of the right eye without macula [sic] edema and of the left eye with macula [sic] edema; alleged diabetic neuropathy; iron deficient anemia; obesity; alleged vertigo; alleged bilateral hand pain; alleged right middle finger trigger finger; hypertension; a history of hysterectomy and oophorectomy; depression; and anxiety . . . .

Id.  However, the ALJ found that neither a single impairment nor any combination of them had significantly limited, nor would be expected to significantly limit, Dolliver's ability to perform basic work-related activities for at least twelve months.  Id.  The ALJ based his decision on the record as a whole, on the non-severe impairment findings of Drs. Grande and Benanti, as well as on the initial EAEDC Medical Report completed by Dr. Del Rio-Cadorette.  Id. at 28.  The ALJ

---

[4] The First Circuit has framed the five steps as follows:

> The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

found persuasive Dr. Del Rio-Cadorette's assessment that, while Dolliver's impairments would create some likely limitations, that those limitations would not be expected to last beyond six to twelve months.  Id.  The ALJ also noted that no treating physician had ever identified a severe impairment.  Id.  Additionally, the ALJ found that Dolliver's testimony was inconsistent with the record as a whole because

> [t]he medical evidence does not demonstrate a level of symptomatology associated with the claimant's conditions, considered singularly or in combination, consistent with the limitations described in her testimony.  While the claimant undoubtedly experienced her non-severe impairments throughout the course of the relevant period, there is little objective evidence that the conditions ever caused more than a minimal limitation on her ability to perform work related activities.

Id. at 29.  As she did not have a severe impairment, the ALJ ended his inquiry at step two: He found that Dolliver was not disabled under 42 U.S.C. 1382c(a)(3)(A) and therefore denied her SSI application.  Id. at 30.

  E. Review by the Appeals Council

After Dolliver requested review of the ALJ's unfavorable decision, the Appeals Council denied her request on November 22, 2019.  Id. at 1–6.  Dolliver's request was supplemented by a new EAEDC Medical Report that was completed by Dr. Del Rio-Cadorette on August 24, 2019, prior to the ALJ's decision.  Id. at 36–46.  In the new EAEDC Medical Report, Dr. Del Rio-Cadorette credited Dolliver's diagnoses of uncontrolled diabetes mellitus, impaired vision, hypertension, iron deficiency anemia, and osteoarthritis in her hands, as well as fatigue and hyperglycemia, as impactful on her ability to perform various activities of daily living.[5]  Id. at 42, 45.  Unlike her initial EAEDC Medical Report determination from February 20, 2018, here,

---

[5] In particular, Dr. Del Rio-Cadorette assessed that Dolliver would have difficulty performing the following activities: ordinary housework, food shopping, driving, managing medications, using a computer, and visiting family and/or friends.  A.R. at 45.  She also noted that Dolliver's condition was "chronic" and that improvement was not expected.  Id. at 41.

11

Dr. Del Rio-Cadorette concluded that Dolliver had physical impairments that would affect her ability to work and last more than a year. Id. at 46.

The Appeals Council concluded that this new evidence was insufficient to warrant reversal of the ALJ's decision. Responding to the submission of the new EAEDC Medical Report, the Appeals Council explained: "You submitted records from Mariel del Rio-Cadorette, M.D. dated August 24, 2019 (11 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." Id. at 2. Finding "no reason under our rules to review the Administrative Law Judge's decision," the Appeals Council denied Dolliver's request for review, making the ALJ's decision the final decision of the Commissioner. Id. at 1.

## II.     LEGAL STANDARDS

The District Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of the Social Security Administration, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the Court may not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal standard. Id. Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); accord Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); see Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003) (noting substantial evidence is less than a preponderance of the evidence). This standard of review "is more deferential than it may sound to the lay ear." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Conversely, where the Commissioner's finding is

not supported by substantial evidence or is the result of an error of law in the evaluation of the claim, the Court will not uphold it.  42 U.S.C. § 405(g).

When the administrative record reasonably might support multiple conclusions, the Court must uphold the Commissioner's decision if it is supported by substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991); see Richardson, 402 U.S. at 399 (noting resolution of conflicts in evidence, including medical evidence, is the Commissioner's task).  The Supreme Court has emphasized that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) (quotation marks omitted).  Administrative findings of fact are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  Moreover, an ALJ is not permitted to "substitute his own layman's opinion for the findings and opinion of a physician," Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987), nor may he disregard relevant medical evidence in making his determination, Nguyen, 172 F.3d at 35.

ALJs commonly review assessments provided by three categories of medical experts: sources who have treated the claimant for their impairments ("treating sources"), sources who have examined the claimant for the purposes of rendering an opinion in connection with their disability claim, and sources who have reviewed the claimant's medical records but have not treated or examined the claimant.  See generally 20 C.F.R. § 404.1520c.[6]  "A treating

---

[6] Regulation citations correspond to the regulations in effect at the time of the July 30, 2019 administrative hearing.  The regulation now located at 20 C.F.R. § 404.1520c replaced an earlier regulation located at 20 C.F.R. § 404.1527 on March 27, 2017.

source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'"  Polanco-Quinones v. Astrue, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).  In other words, there is "a general presumption of deference to the treating physician's opinion."  Abubakar v. Astrue, No. 1:11-cv-10456-DJC, 2012 WL 957623, at *8 (D. Mass. Mar. 21, 2012).  However, the opinion of a treating physician need not be given controlling weight where the ALJ determines that it is inconsistent with the other substantial evidence in the case record.  20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."); see generally Falcon-Cartagena v. Comm'r of Soc. Sec., 21 F. App'x 11, 12–13 (1st Cir. 2001) (per curiam) (a treating physician's opinion is given less weight when it is inconsistent with the balance of evidence on record).

Where an ALJ does not give controlling weight to a treating physician's opinion, he must determine how much weight to accord the opinion based on the following factors:

> 1) length of treatment relationship and frequency of examination; 2) nature and extent of the treatment relationship; 3) how well supported the conclusion is by relevant evidence; 4) how consistent the opinion is with the record as a whole; [and] 5) how specialized the knowledge is of the treating physician.

Abubakar, 2012 WL 957623, at *9; see also 20 C.F.R. § 404.1520c(c)(1)–(5).  The ALJ need not expressly discuss each factor, but must give "good reasons" for the weight afforded to a treating source's medical opinion.  Bourinot v. Colvin, 95 F. Supp. 3d 161, 177 (D. Mass. 2015) (citing 20 C.F.R. § 404.1527(c)(2)).

The opinions of other examining and non-examining sources are accorded weight based on the extent to which they are supported by relevant evidence, whether they are consistent with the rest of the medical record, the level of specialized knowledge demonstrated by the source, and any other relevant factors. Abubakar, 2012 WL 957623, at *11; 20 C.F.R. § 404.1520c. The opinion of a non-treating physician may satisfy the substantial evidence standard where an ALJ determines not to give controlling weight to a treating physician's opinion and it is clear that the non-treating examiner reviewed the claimant's medical findings with care. See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (affirming a non-treating doctor's medical opinion as substantial evidence); Agrón-Bonilla v. Comm'r of Soc. Sec., Civil No. 08-2111-DRD-JA, 2009 WL 4670538, at *5 (D.P.R. Dec. 9, 2009) (affirming ALJ denial of benefits that relied on opinions of non-treating state agency physicians). Ultimately, where the findings of a claimant's treating physician differ from those of other examining and non-examining sources, "it is the Secretary's responsibility to choose between conflicting evidence." Burgos Lopez v. Sec'y of Health & Human Servs., 747 F. 2d 37, 41 (1st Cir. 1984).

While the ALJ must consider all available evidence, he is "not obligated to discuss every bit of evidence." Frost v. Barnhart, 121 F. App'x 399, 400 (1st Cir. 2005) (per curiam). Rather, there is a presumption "that the ALJ has considered all of the evidence before him." Quigley v. Barnhart, 224 F. Supp. 2d 357, 369 (D. Mass. 2002).

III.    DISCUSSION

Dolliver alleges that the ALJ committed three errors in denying her SSI application: (1) that the ALJ erred in mischaracterizing her diabetes diagnosis as "well controlled" when assessing that the impairment was non-severe; (2) that the ALJ erred in rejecting or disregarding

the findings and opinions of her treating physicians; and (3) that the ALJ erred in relying on the opinions of non-examining state physicians that did not consider all of Dolliver's impairments in their evaluations. Doc. No. 16 at 4–6. However, all three of Dolliver's contentions are unavailing and hence do not warrant reversal or remand.

  A.  <u>Characterization and Severity of Impairments</u>

  First, Dolliver argues that the ALJ erroneously mischaracterized her diabetes diagnosis as "well controlled" when he found that the impairment was not severe. <u>Id.</u> at 4. She also argues that raw glucose readings throughout 2017, 2018, and 2019 demonstrate that her diabetes remained uncontrolled. <u>Id.</u>

  The ALJ's conclusion that Dolliver's diabetes was under control was supported by substantial evidence. Dr. Hait observed on June 21, 2019, that Dolliver's blood sugars were better under control. A.R. at 865. He also observed that her activities of daily living were intact. <u>Id.</u> The ALJ was entitled to draw the reasonable inference that Dolliver's diabetes was, by that point, reasonably well-managed. Although the record also contains evidence from which a factfinder might infer Dolliver's diabetes remained uncontrolled, "the resolution of conflicts in the evidence is for the Secretary, not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769.

  Moreover, the state of Dolliver's diabetes does not, on its own, establish that Dolliver had a severe impairment. In his decision, the ALJ found that, while Dolliver suffered from certain medically determinable impairments, none of them, either individually or in combination, were expected to create more than "a minimal limitation" in her ability to perform work-related activities, and thus were non-severe. A.R. at 29. Even assuming Dolliver's diabetes was uncontrolled, the ALJ considered the record as a whole and the opinions of Drs. Del Rio-Cadorette, Grande, and Benanti and found that her condition would only create minimal

limitations in her ability to perform work-related activities.  Id. at 28.  Dolliver argues that her medical records show that she was chronically hyperglycemic, causing long-term diabetic complications that created a severe impairment.  Doc. No. 16 at 4.  But documentation of a medical condition such as elevated blood sugar levels does not compel a finding that Dolliver's chronic condition caused a severe impairment.  On its own, it does not demonstrate that she would be incapable of performing work-related activities, a necessary component of a severe impairment, nor does the record as a whole compel such a finding.[7]

### B.   Opinions of Treating and Non-Treating Physicians

Dolliver next argues that the ALJ erroneously considered the medical evidence before in him finding that Dolliver did not suffer from a severe impairment.  She argues that the ALJ rejected the opinion of one of her primary treating sources, Dr. Del Rio-Cadorette, and instead improperly relied on the opinions of non-examining state physicians that did not discuss relevant documented impairments.  But the ALJ was not required to rely on Dr. Del Rio-Cadorette's opinion, and the record, examined as a whole, does not compel a finding that Dolliver suffered from a severe impairment.

Dolliver argues that the ALJ rejected the EAEDC Medical Report Dr. Del Rio-Cadorette submitted.  Doc. No. 16 at 5.  But the ALJ did not reject Dr. Del Rio-Cadorette's finding that Dolliver would likely be limited in her ability to perform certain activities of daily living because of her diabetes.  Rather, in his decision, he credited Dr. Del Rio-Cadorette's assessment that her uncontrolled diabetes would be likely to create limitations in Dolliver's ability to perform certain

---

[7] Dolliver also argues that the ALJ misread the objective medical evidence when "he did not consider uncontrolled diabetes, hyperglycemia, and resulting complications in determining whether her reported symptoms were consistent with the medical evidence." Id. at 5.  This argument also fails.  The ALJ listed diabetes, diabetic retinopathy, and diabetic neuropathy as medically determinable impairments in his decision, finding them not severe.  A.R. at 24.

17

activities of daily living, but ultimately found persuasive that the limitations would not persist beyond six to twelve months in his ruling that they would be minimal in nature. A.R. at 28. Because this finding was based on Dr. Del Rio-Cadorette's assessment, it was supported by substantial evidence, and is not inconsistent with the EAEDC Medical Report or the record as a whole.[8]

     Dolliver next argues that the ALJ mistakenly relied upon the opinions of non-examining state physicians in his decision. But the ALJ considered the disability assessments of Drs. Grande and Benanti within the context of the entire record before him. After a physical examination and a review of the medical record, Dr. Grande noted that Dolliver's primary impairment was obesity. Id. at 112. Relying on the fact that Dolliver was largely able to perform her activities of daily living, Dr. Grande found that Dolliver's statements regarding the symptoms she experienced were only partially consistent with the medical evidence and that Dolliver's impairment was not severe. Id. at 112–13. Likewise, Dr. Benanti again considered Dolliver's obesity within the context of other medical evidence, including the mental impairments assessed by Dr. Quinones, and also concluded that Dolliver did not have a severe impairment. Id. at 124–25. Given the ALJ's reliance on Dr. Del Rio-Cadorette's finding that limitations on Dolliver's activites of daily living would not persist beyond six to twelve months, this is not a case of reliance on "a written report submitted by a non-testifying, non-examining physician who merely reviewed the written medical evidence [that] could not alone constitute substantial evidence." Berrios Lopez, 951 F.2d at 431. Rather, the medical opinions offered by

---

[8] Dolliver makes no argument in this court about Dr. Del Rio-Cadorette's August 24, 2019, report, which was submitted to the Appeals Council but was not before the ALJ. Nor does she specifically argue that the Appeals Council's decision was error. Accordingly, the Court does not consider it in evaluating the challenge to the decision.

non-treating physicians Drs. Grande and Benanti support the ALJ's conclusion based on treating physicians Dr. Del Rio-Cadorette's opinion, which suffices on its own as substantial evidence to support the ALJ's finding. For that reason, the Court cannot disturb the ALJ's finding.

IV. CONCLUSION

For the foregoing reasons, Dolliver's motion (Doc. No. 15) is DENIED, and the Commissioner's motion (Doc. No. 18) is ALLOWED.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge